# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK GOLD POTATO SALES, INC., <br><br> Plaintiff, <br><br> v. <br><br><br> DISCOVERY GARDENS, LLC, a California limited liability company; and CALIFORNIA OREGON SEED, INC. an Oregon corporation, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM. | 1:08-cv-1488 GSA <br><br> SCHEDULING ORDER (Fed. R. Civ. P. 16) <br><br> Discovery Deadlines: <br>   Initial Disclosures: January 30, 2009 <br>   Non-Expert Discovery: May 31, 2009 <br>   Expert Disclosure: June 30, 2009 <br>   Supplemental Expert Disclosure: <br>      July 17, 2009 <br>   Expert Discovery: July 31, 2009 <br><br> Motion Deadlines: <br>   Non-Dispositive: <br>      Filing: August 14, 2009 <br><br>   Dispositive: <br>      Filing: September 11, 2009 <br><br> Settlement Conference: <br>   April 13, 2009 at 10:30 a.m. <br>   Courtroom 9 (DLB), 6th Floor <br><br> Pre-Trial Conference: <br>   October 22, 2009 at 8:30 a.m. <br>   Courtroom 10, 6th Floor <br><br> Trial:   December 8, 2009 at 8:30 a.m. <br>   Courtroom 10, 6th Floor <br>   Jury Trial - 2-3 days |

**I.     Date of Scheduling Conference**

January 8, 2009

**II.    Appearances of Counsel**

Joseph Choate appeared on behalf of Plaintiff Black Gold Potato Sales, Inc. Scott Belden

1

appeared on behalf of Defendant California-Oregon Seed, Inc., and Oregon Corporation.

### III. The Pleadings

In February of 2007, BLACK GOLD POTATO SALES, INC. ("Black Gold"), DISCOVERY GARDEN'S, LLC, and CALIFORNIA-OREGON SEED, INC., entered into a written agreement entitled Grower Services Agreement (the "Agreement"). California-Oregon Seed provided Sierra Gold potato seeds to Black Gold, Black Gold grew the potatoes, and Discovery Garden's was to handle the marketing of the potatoes. The Agreement provided that the potatoes could be used either for Tablestock (i.e., for baking, microwaving or boiling) or Chipstock (i.e., to make potato chips). Sierra Gold potatoes are a special hybrid variety of potatoes.

The planting and cultivation of the potatoes are the same irrespective of whether they are to be used for Tablestock or Chipstock. However, there is significant difference in the harvesting process. Potatoes to be used as Chipstock can be harvested, i.e., dug up, immediately. However, when they are to be used as Tablestock, the vines must first be killed with a particular chemical and the potatoes left in the ground to dry out for a period from anywhere between two and three weeks before they can be harvested. The purpose of this vine-killing and the subsequent waiting is to permit the skins of the potatoes to "set," something not required when they are going to be made into potato chips.

#### 1. Black Gold's Contentions:

It is Black Gold's position that, under the terms of the Agreement, Black Gold agreed to grow Sierra Gold potatoes for California-Oregon Seed and Discovery Garden's. It was up to Discovery Garden's to instruct Black Gold as to the purposes for which the potatoes were to be used. Black Gold asserts that, hoping to sell the potatoes for Chipstock, Discovery Garden's held off telling Black Gold to harvest the rapidly maturing potatoes until they were in fact already matured, at which point they told Black Gold the potatoes were to be used as Tablestock and to

apply the necessary vine-killing chemicals.  The lengthy vine-killing process resulted in the harvesting of over-mature potatoes, which Discovery Garden's claims did not meet the quality and condition requirements under the Agreement.  It is Black Gold's position that there is no evidence to establish that the potatoes did not meet the requirements at least for Chipstock if not Tablestock, and that in any event, the condition of the potatoes at harvest, whatever they were, was the direct result of the failure of Discovery Garden's to give timely instructions as to harvesting.

Black Gold invoiced Discovery Garden's $56,580 for the potatoes and Discovery Gardens has refused to pay.

There are really no novel legal issues in this litigation as it appears to be a straight breach-of-contract action.

**2.     California-Oregon Seed and Discovery Garden's Contentions:**

California-Oregon Seed fully performed its obligation to provide Sierra Gold seed to Black Gold under the Agreement.  California-Oregon Seed and Discovery Garden's had no obligation with regard to the land, water, irrigation, chemicals, labor, equipment, materials, and facilities used in growing the Variety, or the harvesting, packing, and shipping (other than marketing materials) of the Sierra Golds.  Black Gold, and no one else, was obligated to harvest, pack, and ship the Sierra Golds, and Black Gold, and no one else, was obligated to harvest the Sierra Golds within a specific time frame:  between May 15, 2007, and June 20, 2007.

The Sierra Golds grown by Black Gold did not meet the standards required by the Agreement.  Black Gold failed to harvest the Sierra Golds within the specified harvest time in the Agreement.  As a result, upon inspection at their destinations, the Sierra Golds grown by Black Gold suffered from 29% soft rot, with total defects of 44% and all loads shipped by Black Gold failed to satisfy 85% US #1 grade on account of their condition.  Similar to the potatoes rejected by customers, the remaining Sierra Golds were not suitable for shipment to buyers located by

3

Discovery Garden's due to the same quantity and quality of defects.

Given the uncontroverted facts indicating that California-Oregon Seed fully performed under the Agreement by providing the Sierra Gold seeds to Black Gold on time for planting by Black Gold in the appropriate time frame, California-Oregon Seed urges its dismissal from this action. Any dispute regarding the securing of customers for the Sierra Golds grown by Black Gold is only between Discovery Garden's and Black Gold.

As a result of Black Gold's failure to deliver Sierra Golds that met the standards required by the Agreement, California-Oregon Seed and Discovery Garden's suffered damages in the approximate amount of $31,980 in lost revenue. California-Oregon Seed and Discovery Garden's also suffered a loss in the amount of $2,940 in freight costs for the rejected shipments of Sierra Golds to Sterman Masser, Inc., and Mrs. Dennis's Potato Farm. California-Oregon Seed and Discovery Garden's total damages, therefore, total $34,920, plus pre-judgment interest at the legal rate.

Paragraph 15 of the Agreement provides that "[i]n any action or proceeding arising under this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs." Accordingly, California-Oregon Seed and Discovery Garden's request an award of attorney's fees and costs under the Agreement according to proof.

    **a. Proposed Amendments.**

No amendments are contemplated at this time, however, pursuant to an agreement by the parties in the joint statement, any amendments shall be filed no later than **March 15, 2009.**

**IV.**     **Summary of Uncontested and Contested Facts**.

    **1.**     **Uncontested Facts:**

While this litigation is in the early stages of discovery, the parties currently feel that the following facts are uncontested:

    a.    California-Oregon Seed has been granted an exclusive license that allows it to sell, distribute, market, or otherwise exploit a potato seed variety developed by the Texas A&M University System as experimental clone TX1523-1 Ru/Y ("Variety"), which Variety results in the production of "Sierra Gold®" brand potatoes ("Sierra Golds").

    b.    On February 5, 2007, Black Gold, Discovery Garden's, and California-Oregon Seed entered into a written agreement entitled *Grower Services Agreement* (the "Agreement").

    c.    The Agreement is valid.

    d.    Under the Agreement, California-Oregon Seed was obligated to provide Counterdefendant with 440 hundred weight ("cwt") of the Variety for planting on 17 acres of Counterdefendant's land.  California-Oregon Seed delivered the potato seeds to Black Gold no later than February 10, 2007.

    e.    Under the Agreement, Black Gold, at its own expense, was responsible for providing the land, water, irrigation, chemicals, labor, equipment, materials, and facilities necessary to plant and grow the Variety on the approximately 17 acres of land.

    f.    Each delivery of Sierra Golds intended for "Tablestock" had to be:  (1) comprised of 85% of Sierra Golds in conformity with the US #1 standard; (2) a minimum of two inches; (3) comprised of 95% of Sierra Golds that did not exceed 14 ounces; and (4) comprised of 99.5% of Sierra Golds with no soft rot.

    g.    If the Sierra Golds grown by Black Gold under the Agreement were to be used as "Chipstock," then they had to conform with US #1 Process Grade.

    h.    Under the Agreement, locating and/or securing purchasers or prospective purchasers of the Sierra Golds grown by Black Gold was the responsibility of Discovery Garden's.

    i.    Discovery Garden's informed Black Gold of its failure to deliver Sierra Golds that met the standard required by the Agreement and that they would not be accepted or purchased.

  j. Black Gold grew a total of 4,920 cwt of Sierra Golds.

**2. Contested Facts:**

While this litigation is in the early stages of discovery, the parties currently feel that the following facts are contested:

  a. Whether there are facts present in this case to implicate the Perishable Agricultural Commodities Act ("PACA").

  b. Whether, if PACA applies to the facts of this case, Black Gold has met all requirements for protection under PACA.

  c. Whether Black Gold agreed to grow Sierra Gold potatoes for California-Oregon Seed and Discovery Garden's under the terms of the Agreement.

  d. Whether California-Oregon Seed and Discovery Garden's had any obligation with regard to the land, water, irrigation, chemicals, labor, equipment, materials, and facilities used in growing the Variety, or the harvesting, packing, and shipping (other than marketing materials) of the Sierra Golds.

  e. Whether Black Gold, and no one else, was obligated to harvest, pack, and ship the Sierra Golds.

  f. Whether Black Gold, and no one else, was obligated to harvest the Sierra Golds within a specific time frame: between May 15, 2007, and June 20, 2007.

  g. Whether the Sierra Golds grown by Black Gold met the standards required by the Agreement.

  h. Whether Black Gold failed to harvest the Sierra Golds within the specified harvest time in the Agreement.

  i. Whether, upon inspection at their destinations, the Sierra Golds grown by Counterdefendant suffered from 29% soft rot, with total defects of 44% and all loads shipped by Counterdefendant failed to satisfy 85% US #1 grade on account of their condition.

6

  j. Whether the remaining Sierra Golds were not suitable for shipment to buyers located by Discovery Garden's due to the same quantity and quality of defects.

  k. Whether those Sierra Golds actually shipped to Sterman Masser, Inc., and Mrs. Dennis Potato Farm, Inc., were rejected by those buyers.

  l. Whether Discovery Garden's was responsible for only marketing any satisfactory crop grown by Black Gold in accordance with the Agreement, including locating and/or securing purchasers or prospective purchasers of conforming Sierra Gold's grown by Black Gold.

  m. Whether Discovery Garden's failed to notify Black Gold in a timely manner that the entire crop was to be used for Tablestock.

  n. Whether Discovery Garden's failed to instruct Black Gold to apply vine-kill in a timely manner.

  o. Whether Discovery Garden's failed to notify Black Gold of the customers to whom it was to ship the potatoes in a timely manner.

  p. Whether Discovery Garden's failed to notify Black Gold in a timely manner to commence harvesting the potato crop.

  q. Whether, if Black Gold had grown a crop of Sierra Golds that had met the specifications required by the Agreement, Discovery Garden's would have been obligated to compensate Black Gold at the rate of $11.50 per cwt of Sierra Golds used for Tablestock

  r. Whether Discovery Garden's had contracted to receive $18.00 per cwt from each buyer it secured to receive Tablestock Sierra Golds from Black Gold's crop.

  s. Whether Discovery Garden's would have received a total net profit of $6.50 per cwt of conforming Sierra Golds delivered to buyers by Black Gold.

**V.** **Summary of Contested and Uncontested Legal Issues.**

**1.** **Uncontested Legal Issues:**

  a. Venue is proper in this Court if subject matter jurisdiction is otherwise present.

**2.      Contested Legal Issues:**

a. Whether the Court has subject matter jurisdiction;

b. Whether the Court has supplemental jurisdiction;

c. Whether California-Oregon Seed fully performed its obligation to provide the enumerated quantity of the Sierra Golds to Black Gold.

d. Whether Discovery Garden's fully performed its alleged obligation to market and provide buyers of the Sierra Golds that Black Gold was obligated to grow under the Agreement.

e. Whether the Agreement was breached and if so who is liable for the breach and the amount of damages.

f. Whether Discovery Garden's was obligated to market potatoes that did not meet the standards required by the Agreement.

g. Whether Black Gold breached the Agreement by not growing Sierra Golds that conformed to the specifications required by the Agreement.

h. Whether Discovery Garden's conduct vis á vis the Agreement constituted a violation of the implied covenant of good faith and fair dealing.

i. Whether any failure of the potato crop to meet the quality and conditions required under the Agreement were due to an Act of God.

j. Whether Discovery Garden's failed to mitigate any damages it might have suffered.

k. Whether COS provided Black Gold with seeds that would meet the size and weight specifications called for in the Agreement.

l. Whether the Perishable Agricultural Commodities Act ("PACA") applies to the facts of this case.

m. Whether, if PACA applies to the facts of this case, Black Gold qualifies for protection under PACA.

///

**VI.      Consent to the Magistrate Judge**

Pursuant to 28 U.S.C. § 636(c), the parties have consented to conduct all further proceedings in this case, including trial, before the Honorable Gary S. Austin, U.S. Magistrate Judge.

**VII.     Discovery Plan and Cut-Off Date**

The parties shall exchange the initial disclosures required by Fed. R. Civ. P. 26(a)(1) by **January 30, 2009**.  The parties are ordered to complete all discovery pertaining to non-experts on or before **May 31, 2009.**  The parties are directed to disclose all expert witnesses, in writing, on or before **June 30, 2009.**   The parties also shall disclose all supplemental experts on or before **July 17, 2009.**   The written designation of experts shall be made pursuant to Fed. R. Civ. P. Rule 26(a)(2), (A) and (B) and shall include all information required thereunder.  Failure to designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant to this order.

The parties are directed to complete all expert discovery on or before **July 31, 2009.**  The provisions of Fed. R. Civ. P. 26(b)(4) and (5) shall apply to all discovery relating to experts and their opinions.  Experts must be fully prepared to be examined on all subjects and opinions included in the designation.  Failure to comply will result in the imposition of sanctions, which may include striking the expert designation and preclusion of expert testimony.

**VIII.    Pre-Trial Motion Schedule**

All Non-Dispositive Pre-Trial Motions, including any discovery motions, shall be filed no later than **August 14, 2009.**  In scheduling such motions, the parties shall comply with Local Rules 78-230 and 56-260.  Counsel must comply with Local Rule 37-251 with respect to discovery disputes or the motion will be denied without prejudice and dropped from calendar.

In scheduling such motions, the Judge may grant applications for an order shortening time pursuant to Local Rule 6-142(d).  However, if a party does not obtain an order shortening time,

the notice of motion *must* comply with Local Rule 37-251.

Counsel or pro se parties may appear and argue non-dispositive motions by telephone, providing a written request to so appear is made to the Magistrate Judge's Courtroom Clerk no later than five (5) court days before the noticed hearing date. In the event that more than one party requests to appear by telephone then it shall be the obligation of the moving part(ies) to arrange and originate a conference call to the court.

All Dispositive Pre-Trial Motions shall be filed no later than **September 11, 2009**, and heard in Courtroom 10 before the Honorable Gary S. Austin, United States Magistrate Court Judge. In scheduling such motions, the parties shall comply with Local Rules 78-230 and 56-260.

**1. Pre-Trial Conference Date**

The pre-trial conference will be held on **October 22, 2009**, **at 8:30 a.m.** in Courtroom 10 before the Honorable Gary S. Austin.

The parties are ordered to file a Joint Pretrial Statement pursuant to Local Rule 16-281(a)(2). The parties are further directed to submit a digital copy of their pretrial statement in Word Perfect X3[1] format, directly to Judge Austin's chambers by emailing it to gsaorders@caed.uscourts.gov.

The parties' attention is directed to Rules 16-281 and 16-282 of the Local Rules of Practice for the Eastern District of California, as to the obligations of counsel in preparing for the pre-trial conference. The Court will insist upon strict compliance with those rules.

**2. Trial Date**

The trial will be held on **December 8, 2009**, **at 8:30 a.m.** in Courtroom 10 before the Honorable Gary S. Austin, United States Magistrate Court Judge.

   a.   Plaintiff has requested a court trial.

---

[1] If WordPerfect X3 is not available to the parties then the latest version of WordPerfect or any other word processing program in general use for IBM compatible personal computers is acceptable.

      b.      Parties' Estimate of Trial Time: 2-3 days.

      c.      Parties' attention is directed to Local Rules of Practice for the Eastern District of California, Rule 16-285, for preparation of trial briefs.

### 3. Settlement Conference

A Settlement Conference is scheduled for **April 13, 2009**, **at 10:30 a.m.** in Courtroom 9 before the Honorable Dennis L. Beck, United States Magistrate Judge.

Unless otherwise permitted in advance by the Court, <u>the attorneys who will try the case</u> shall appear at the Settlement Conference <u>with the parties</u> and the person or persons having <u>full authority</u> to negotiate and settle the case <u>on any terms</u>[2] at the conference.

<u>CONFIDENTIAL SETTLEMENT CONFERENCE STATEMENT</u>

At least five (5) court days prior to the Settlement Conference the parties shall submit, directly to the Magistrate Judge's chambers by email to dlborders@caed.uscourts.gov, a Confidential Settlement Conference Statement.  The statement <u>should not be filed</u> with the Clerk of the Court <u>nor served on any other party</u>, although the parties may file a Notice of Lodging of Settlement Conference Statement.  Each statement shall be clearly marked "confidential" with the date and time of the Settlement Conference indicated prominently thereon.  The parties are urged to request the return of their statements if settlement is not achieved and if such a request is not made the Court will dispose of the statement.

The Confidential Settlement Conference Statement shall include the following:

      A.  A brief statement of the facts of the case.

---

[2] Insurance carriers, business organizations, and governmental bodies or agencies whose settlement agreements are subject to approval by legislative bodies, executive committees, boards of directors or the like shall be represented by a person or persons who occupy high executive positions in the party organization and who will be directly involved in the process of approval of any settlement offers or agreements.  To the extent possible, the representative shall have the authority, if he or she deems it appropriate, to settle the action on terms consistent with the opposing party's most recent demand.

11

      B. A brief statement of the claims and defenses, i.e., statutory or other grounds upon which the claims are founded; a forthright evaluation of the parties' likelihood of prevailing on the claims and defenses; and a description of the major issues in dispute.

      C. A summary of the proceedings to date.

      D. An estimate of the cost and time to be expended for further discovery, pretrial and trial.

      E. The relief sought.

      F. The party's position on settlement, including present demands and offers and a history of past settlement discussions, offers and demands.

Should the parties desire an additional settlement conference, they will jointly request one of the court, and one will be arranged. In making such request, the parties are directed to notify the court as to whether or not they desire the undersigned to conduct the settlement conference or to arrange for one before another judicial officer.

**IX.** **Request for Bifurcation, Appointment of Special Master, or other Techniques to Shorten Trial**

No bifurcation is requested by either party.

**X.** **Related Matters Pending**

There is no related litigation.

**XI.** **Compliance with Federal Procedure**

The parties are expected to familiarize themselves with the Federal Rules of Civil Procedure and the Local Rules of Practice of the Eastern District of California, and to keep abreast of any amendments thereto. The Court must insist upon compliance with these Rules if it is to efficiently handle its increasing case load and sanctions will be imposed for failure to follow the Rules as provided in both the Federal Rules of Civil Procedure and the Local Rules of Practice for the Eastern District of California.

### XII. Effect of this Order

The foregoing order represents the best estimate of the Court and the parties as to the agenda most suitable to dispose of this case. The trial date reserved is specifically reserved for this case. If the parties determine at any time that the schedule outlined in this order cannot be met, counsel are ordered to notify the Court immediately of that fact so that adjustments may be made, either by stipulation or by subsequent status conference.

Stipulations extending the deadlines contained herein will not be considered unless they are accompanied by affidavits or declarations, and where appropriate attached exhibits, which establish good cause for granting the relief requested.

Failure to comply with this order may result in the imposition of sanctions, including but not limited to, dismissal of this action.

**IT IS SO ORDERED.**

Dated: **January 12, 2009**            /s/ **Gary S. Austin**
                                   **UNITED STATES MAGISTRATE JUDGE**